# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Selene Finance, L.P., | Case No. 2:16-cv-02618-JAD-NJK |
| Plaintiff | |
| v. | |
| Saticoy Bay LLC Series 1168 Aspen Cliff, et al., | **Order Granting Summary Judgment** |
| Defendants | [ECF Nos. 36, 40] |
| ALL OTHER PARTIES AND CLAIMS | |

Selene Finance, L.P. brings this action to challenge the effect of the 2014 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] Selene sues the Weston Hills Homeowners' Association (the HOA), which conducted the foreclosure sale, and foreclosure-sale purchaser Saticoy Bay, LLC Series 1168 Aspen Cliff, seeking a declaration that the sale was invalid or that Saticoy Bay purchased the property subject to Selene's security interest. Selene and Saticoy Bay crossmove for summary judgment.[2] Because Selene has demonstrated that its predecessor-in-interest validly tendered the superpriority portion of the HOA lien but the HOA foreclosed anyway, I grant summary judgment in Selene's favor and close this case.

---

[1] ECF No. 1.

[2] I find these motions suitable for disposition without oral argument. L.R. 78-1.

**Background**

James and Nicholas Grayson purchased the home at 1168 Aspen Cliff Drive in Henderson, Nevada in 2008 with a $258,221 loan from Taylor, Bean & Whitaker Mortgage Corporation, secured by a deed of trust.[3] After two assignments, Selene now holds that deed of trust.[4] The home is located in the Weston Hills planned-unit development and subject to the governing documents for its homeowners' association.[5] The Nevada Legislature gave HOAs a superpriority lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[6] When the assessments on this home became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 in 2013.[7]

When the then-holder of the deed of trust Bank of America learned of the impending foreclosure, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP,[8] sent a letter to the HOA stating that its client "hereby offers to pay" the nine months of assessments for common expenses incurred before the date of the HOA's notice of delinquent assessment dated July 17, 2013, and asking the HOA to "refrain from taking further action to enforce this HOA

---

[3] ECF No. 36-1 at 3 (deed of trust).

[4] ECF No. 40-4 at 2 (3/18/10 assignment from MERS to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP); ECF No. 36-1 at 16 (9/26/14 assignment from BAC to Selene).

[5] ECF No. 36-1 at 13 (PUD rider).

[6] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 409 (Nev. 2014).

[7] ECF Nos. 36-1 at 20 (notice of lien for delinquent assessments); *id*. at 23 (notice of default and election to sell); and *id*. at 46 (notice of trustee's sale).

[8] The letter reflects that Miles Bauer was acting for MERS as nominee for Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, ECF No. 36-1 at 26, so for ease of reference I refer to the Miles Bauer client as Bank of America.

lien until" the parties could "speak to attempt to fully resolve all issues."[9]  The HOA's agent

Hampton & Hampton Collections, LLC responded with a "Payoff Demand and Statement of

Account," stating that "the amount due for 9 months of assessments" was $288.75.[10]

Miles Bauer responded two weeks later by sending a check for $288.75 along with a

letter that explained that Miles Bauer was including a check to pay off the superpriority amount

of the lien:

> Our client has authorized us to make payment to you in the amount
> of $288.75 to satisfy its obligations to the HOA as a holder of the
> first deed of trust against the property.  Thus, enclosed you will
> find a cashier's check made out to Hampton & Hampton
> Collections LLC in the sum $288.75, which represents the
> maximum 9 months['] worth of delinquent assessments
> recoverable by an HOA.[11]

The letter further stated that "This is a non-negotiable amount and any endorsement of said

cashier's check on your part, whether express or implied, will be strictly construed as an

unconditional acceptance on your part of the facts stated herein and express agreement that

[Bank of America's] financial obligations towards the HOA in regards to the real property . . .

have now been 'paid in full.'"[12]  The HOA's accounting records reflect that the $288.75 was

posted to the account on September 3, 2013.[13]  Nevertheless, the HOA foreclosed on the

property nine months later.[14]  Saticoy Bay was the winning bidder at $10,200.[15]

---

[9] *Id*. at 27.

[10] *Id*. at 31.

[11] *Id*. at 36.

[12] *Id*.

[13] *Id*. at 43.

[14] *Id*. at 50 (foreclosure deed recorded on 7/8/14).

[15] *Id*.

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[16] Selene brings this action to save its deed of trust from extinguishment. It pleads four claims: quiet title, breach of NRS 116.3116, wrongful foreclosure, and injunctive relief.[17] Saticoy Bay counterclaims for quiet title.[18] The parties' quiet-title claims are the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[19] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[20]

Discovery has closed,[21] and Selene and Saticoy Bay crossmove for summary judgment on their quiet-title claims.[22] Selene primarily argues that its predecessor's tender of the full

---

[16] *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d at 419.

[17] ECF No. 1.

[18] ECF No. 34 (Saticoy Bay's counterclaim).

[19] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[20] *Id*. at 1112.

[21] ECF No. 31.

[22] ECF Nos. 36 (Selene); 40 (Saticoy Bay). Selene does not mention its claims against the HOA in its summary-judgment motion. However, I find that they are also properly disposed of at this time. Selene's NRS 116.3116 and wrongful-foreclosure claims against the HOA are pled in the alternative and seek relief only conditionally—"[i]f it is determined" that the sale "extinguished the senior deed of trust." ECF No. 1 at ¶¶ 63, 71. Because I find that the foreclosure sale did not extinguish Selene's deed of trust, the condition precedent to Selene's alternative claims is not

4

superpriority lien amount makes this case procedurally identical to *Bank of America v. SFR Investments Pool 1, LLC* ("*Diamond Spur*"), in which the Nevada Supreme Court held that "after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale on the entire lien is void as to the superpriority portion," so the foreclosure-sale purchaser takes the property subject to the deed of trust.[23]  Saticoy Bay argues that *Diamond Spur* is inapposite and that its status as an innocent purchaser should prevail over all other arguments.[24]  I find that Selene has established that its predecessor validly tendered the superpriority portion of the lien amount, voiding the HOA's sale on the superpriority portion and causing the deed of trust to survive the foreclosure sale.  So I grant Selene's motion on this tender issue, enter summary judgment in Selene's favor and declare that Saticoy Bay took the property subject to the deed of trust, and deny Saticoy Bay's countermotion for summary judgment as moot.[25]

## Discussion

### A.  Standards for crossmotions for summary judgment

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[26]  The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[27]  If the moving party satisfies its

---

met, so I dismiss those claims as moot.  And because "injunctive relief" is a remedy, not an independent cause of action, I dismiss it as non-cognizable.

[23] *Bank of America v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 121 (Nev. Sept. 13, 2018) (en banc).

[24] ECF Nos. 40.

[25] I need not and do not reach Selene's remaining argument that Saticoy Bay's counterclaim is time-barred.

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[27] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[28]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[29] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[30] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[31] The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[32]

---

[28] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[29] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[30] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[31] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[32] *Celotex*, 477 U.S. at 322.

**B.** **The tender of the superpriority amount cured the default, so Saticoy Bay took the property subject to the deed of trust.**

Selene argues that Miles Bauer's tender of $288.75, which consists of nine months' worth of assessments as calculated by the HOA itself,[33] operated to discharge the HOA's superpriority lien and should have prevented the HOA from foreclosing on that lien. Selene relies on *Diamond Spur*, in which the Nevada Supreme Court, sitting en banc, held that a nearly identical "tender cured the default as to the superpriority portion of the HOA's lien, [so] the HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion. Accordingly, the HOA could not convey full title to the property, as [the] first deed of trust remained after foreclosure . . . [and the foreclosure-buyer] purchased the property subject to [the] deed of trust."[34] In *Diamond Spur*, just as here, Miles Bauer contacted the HOA to get clarification on the superpriority amount due. Based on the information received from the HOA, Miles Bauer tendered nine months' worth of assessments to the HOA with a letter nearly identical to the one here.[35] And just as in this case, the HOA nevertheless sold the property at foreclosure.[36] The one difference: whereas the HOA in *Diamond Spur* rejected the tender, this one posted the payment to the account but foreclosed anyway.

The Nevada Supreme Court explained that "[a] valid tender of payment operates to discharge a lien or cure a default."[37] Although a valid tender requires payment in full, for

---

[33] ECF. No. 36-1 at 32.

[34] *Bank of America v. SFR Investments Pool 1, LLC ("Diamond Spur")*, 427 P.3d 113, 121 (Nev. Sept. 13, 2018).

[35] *Id*. at 116.

[36] *Id*. at 116–17.

[37] *Id*. at 117.

purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from

extinguishment under the version of the foreclosure statute in effect in 2013, the bank needed to

pay only "charges for maintenance and nuisance abatement, and nine months of unpaid

assessments."[38]  Because the bank properly calculated nine months' worth of assessments based

on the HOA's information, "and the HOA did not indicate that the property had any charges for

maintenance or nuisance abatement," the *Diamond Spur* Court found that, "[o]n the record

presented, this was the full superpriority amount."[39]

   *Diamond Spur* is dispositive of this case and compels summary judgment in favor of

Selene.  The record shows undisputedly that Miles Bauer validly tendered the full amount of the

superpriority lien to the HOA.  The only charges that could comprise the superpriority portion of

the HOA's lien were "charges for maintenance and nuisance abatement, and nine months of

unpaid assessments."[40]  The HOA's own ledger reflects no charges for maintenance or nuisance

abatement, and the accounting it provided just before the tender calculated the nine months of

unpaid assessments at $288.75.[41]  On this record, Miles Bauer's tender of $288.75—which the

HOA accepted and applied to the account—satisfied the full superpriority portion of the lien.

So, as the Nevada Supreme Court held in *Diamond Spur*, the foreclosure sale on the entire lien

resulted in a void sale as to the superpriority portion, the "first deed of trust remained after

foreclosure," and "the HOA could not convey full title to the property."[42]  Selene is therefore

---

[38] *Id*. (citing 116.3116(2) and *SFR*, 334 P.3d at 412).

[39] *Id.* at 118.

[40] *Id*. at 117 (citing 116.3116(2) and *SFR*, 334 P.3d at 412).

[41] ECF No. 36-1 at 32; 40–43.

[42] *Diamond Spur*, 427 P.3d at 121.

1 entitled to summary judgment on the competing quiet-title claims and a declaration that Saticoy

2 Bay purchased the property subject to the deed of trust.

3 **C.     Equitable subrogation principles do not apply.**

4       Saticoy Bay contends that by paying the superpriority portion of the lien, the lender did

5 not extinguish the lien; instead, it just became equitably subrogated to the rights of the HOA.[43]

6 Saticoy Bay relies on authority generally discussing the doctrine of equitable subrogation to

7 support its position.[44]  But the specific rules from the Nevada Supreme Court's en banc decision

8 in *Diamond Spur* supplant that authority in the HOA lien-foreclosure context we're dealing with

9 here.  The *Diamond Spur* court specifically addressed the legal effect of tendering the

10 superpriority portion of an HOA's lien and concluded that "[a] valid tender of payment operates

11 to discharge" the lien,[45] "cure[s] the default[,] and prevent[s] foreclosure as to the superpriority

12 portion of the HOA's lien by operation of law."[46]  So, contrary to Saticoy Bay's take, Nevada

13 law expressly recognizes that tender does not "operate[] as an assignment" and does not cause

14 the lender to "become[] subrogated to the rights of the Association."[47]  "Tendering the

15 superpriority portion of an HOA lien does not . . . assign . . . an interest in land.  Rather, it

16 *preserves* a preexisting interest," allowing the lender to "maintain its senior interest as the first

17 deed of trust holder," curing the default, and preventing foreclosure.[48]  Because the Nevada

18

19

---

20 [43] ECF No. 41 at 2–6.

21 [44] *Id*.

   [45] *Diamond Spur*, 427 P.3d at 117.

22 [46] *Id*. at 120.

23 [47] ECF No. 41 at 4.

   [48] *Diamond Spur*, 427 P.3d at 119–20.

Supreme Court's 2018 published en banc decision on this precise point controls here, Saticoy

Bay's equitable-subrogation argument fails as a matter of law.

**D.    Further equitable defenses fail.**

Finally, Saticoy Bay argues that it is an innocent, third-party bona fide purchaser, and the

rights of such innocents must prevail.[49]  Third-party purchaser SFR Investment Pool, LLC made

the same argument in *Diamond Spur*, and the Nevada Supreme Court rejected it, too.  The Court

held that "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceedings

renders the sale void."[50]  And that's what happens when an HOA forecloses on the entire lien

after valid tender of the superpriority portion—because the lien is no longer in default, the trustee

lacks the power to foreclose; so, "foreclosure on the entire lien result[s] in a void sale as to the

superpriority portion," "the HOA [can] not convey full title to the property," and the "first deed

of trust remain[s] after the foreclosure."[51]  So, BFP or "innocent" status does not change the

legal reality that Saticoy Bay took this property subject to the first trust deed.

Saticoy Bay also argues that the doctrines of unclean hands and equitable estoppel

preclude me from entering summary judgment in favor of Selene.[52]  But the facts it relies on fail

to support an application of either doctrine.  Saticoy Bay suggests that Selene "is equitably

estopped from claiming it paid the super-priority portion this late in the game" because it waited

a few years before filing this suit.[53]  But Selene commenced this case within the statutory period,

and its predecessor in interest made it clear to the HOA that it was satisfying the superpriority

---

[49] ECF No. 41 at 6–7.

[50] *Diamond Spur*, 427 P.3d at 121.

[51] *Id*.

[52] ECF No. 41 at 8–9.

[53] *Id*. at 9.

amount with its timely tender back in 2013. Saticoy Bay offers no case in which similar conduct

has been found preclusive of equitable relief, and I don't find this conduct here to rise to the

level justifying application of either of these doctrines.

**Conclusion**

Selene has established that its predecessor-in-interest validly tendered the superpriority

portion of the lien amount, voiding the HOA's sale on the superpriority portion and causing the

deed of trust to survive the foreclosure sale. I thus grant Selene's motion on this tender issue,

enter summary judgment in Selene's favor, declare that Saticoy Bay took the property subject to

the deed of trust, and deny Saticoy Bay's countermotion for summary judgment as moot.

With good cause appearing and no reason to delay, IT IS THEREFORE ORDERED that

Selene's motion for summary judgment **[ECF No. 36] is GRANTED**:

- Summary judgment is granted in favor of Selene Finance L.P. and against Saticoy
  Bay, LLC, Series 1168 Aspen Cliff on the equitable quiet-title claims based on
  valid tender;

- Selene's claims against Weston Hills Homeowners' Association are DISMISSED
  as moot because these claims are conditioned upon the court finding that the
  foreclosure sale extinguished the deed of trust;

- Selene's fourth cause of action for injunctive relief is DISMISSED without
  prejudice because injunctive relief is a remedy, not an independent cause of
  action;

And because I am granting summary judgment in favor of Selene based on tender, IT IS

FURTHER ORDERED that Saticoy Bay's Amended Motion for Summary Judgment

**[ECF No. 40] is DENIED** as moot.

1     The Clerk of Court is directed to **ENTER JUDGMENT in favor of Selene Finance**

2  **L.P. and against Saticoy Bay, LLC, Series 1168 Aspen Cliff, DECLARING that Saticoy**

3  **Bay purchased the property at 1168 Aspen Cliff subject to the deed of trust dated March**

4  **25, 2008, and CLOSE THIS CASE.**

5        Dated: May 28, 2019

6                                                              _____
                                                              U.S. District Judge Jennifer A. Dorsey

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23